[Civ. No. 1755.    Third Appellate District.—January 31, 1918.]

## CITY OF NAPA (a Municipal Corporation), Appellant, v. THOMAS MAXWELL et al., Respondents.

APPEAL—RULING ON DEMURRER.—The statute does not confer the right of appeal from a judgment or order sustaining or overruling a demurrer to a complaint.

MUNICIPAL CORPORATIONS—STREET IMPROVEMENT PROCEEDINGS IN CITY OF NAPA—NUMBER OF COMMISSIONERS—GENERAL LAW NOT SUPERSEDED BY CHARTER.—The provision of section 68 of the charter of the city of Napa providing that the duties of commissioners under the general law in the matter of opening, widening, straightening, or closing streets shall be performed under the direction of the councilman in charge of the department of streets and public improvement and the city attorney, was not intended to supersede or take the place of section 6 of the Street Opening and Widening Act of 1889 (Stats. 1889, p. 71), which provides for the appointment of three commissioners to assess benefits and damages.

ID.—CONDEMNATION OF LAND FOR STREET WIDENING—PLEADING—INSUFFICIENT COMPLAINT.—In an action by the city of Napa to condemn a strip of land to widen a street under the act of 1889, the complaint fails to state a cause of action where it is alleged that the city council had appointed the councilman in charge of street improvement and the city attorney as commissioners to assess damages and benefits.

APPEAL from a judgment of the Superior Court of Napa County. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

Wallace Rutherford, for Appellant.

E. S. Bell, for Respondents.

HART, J.—An opinion, prepared by Justice Burnett, was filed in this action on November 20, 1917. While in the original opinion the merits of the controversy were considered and discussed, the appeal was dismissed because this court had no jurisdiction thereof.

A rehearing was granted on the petition of the appellant for the purpose of giving further consideration to the position taken by this court that the attempt by the plaintiff to take an appeal was abortive, and also to consider whether, as the plaintiff contends in its petition, the complaint states a cause of action and is, therefore, good as against a general demurrer, no special grounds of demurrer having been set up against said pleading.

In disposing of the appeal, this court, in its former opinion, said: "We have considered the foregoing on the merits, but another question of serious moment arises, though not suggested by counsel, and that is, whether we have any jurisdiction of the attempted appeal. The notice specifies that the appeal is taken from 'that certain judgment made and rendered on November 15, 1916, by the above-entitled court in the above-entitled action, and entered on November 15, 1916, sustaining said defendant's demurrer to said plaintiff's amended complaint without leave to amend and from the whole of said judgment. But the statute does not confer the right of appeal from a judgment or order sustaining or overruling a demurrer to a complaint, and it has been so declared several times by the appellate courts of this state. (*Litch* v. *Kerns*, 8 Cal. App. 747, [97 Pac. 897]; *Kinard* v. *Jordan*, 10 Cal. App. 219, [101 Pac. 696]; *Hadsall* v. *Case*, 15 Cal. App. 541, [115 Pac. 330]; *Hanke* v. *McLaughlin*, 20 Cal. App. 204, [128 Pac. 772]; *Foster* v. *Bowles*, 138 Cal. 449, [71 Pac. 495]; *Wood, Curtis & Co.* v. *Missouri etc. Ry. Co.*, 152 Cal. 344, [62 Pac. 868].)

"In a case like this where the demurrer is sustained without leave to amend, the proper course is to have a judgment entered dismissing the action and then the appeal is taken from this final judgment. But you look in vain through section 963 of the Code of Civil Procedure to find authority for taking an appeal from an order or judgment sustaining a demurrer to a complaint. The dignity of such an order, it may be said, is not enhanced by calling it a judgment."

Of course, there can be no question of the correctness of the rule as it is above set forth. And upon its face the appeal seems to be addressed entirely to the order sustaining the demurrer, for, as seen, it specifically refers to that order as a judgment and further says that the appeal is ''from the whole of *said* judgment.''

There is, however, a judgment against the plaintiff for costs, and its attorney now contends that the appeal, being ''from the whole of said judgment,'' must be considered to be from the judgment for costs. At the oral argument, the attorney for the defendants conceded that the language of the notice of appeal was broad enough to include an appeal from the judgment for costs. Of course, jurisdiction cannot be conferred by waiver or the consent of the parties, still, in this case, since the attorney for the defendants himself admits that an appeal from the judgment for costs is fairly within the scope of the notice of appeal, and since the language of said notice is rather ambiguous in that respect, we shall take a liberal view of the language of the notice of appeal and consider the appeal as one from the judgment for costs, and so review the merits.

Discussing the merits of the appeal, Justice Burnett, in the former opinion, stated the case and the views of this court as follows:

''This is an action commenced by the city of Napa, a municipal corporation, to condemn a strip of land to widen a street under the act of the legislature of 1889, known as the Street Opening and Widening Act. (Stats. 1889, p. 70.) A demurrer upon the ground that the complaint did not state facts sufficient to constitute a cause of action was interposed by defendant Maxwell and sustained without leave to amend. From the judgment or order sustaining the demurrer the plaintiff appeals.

''The regular steps set forth in the act of 1889 were followed by the plaintiff until section 6 was reached, which requires the appointment of three commissioners. As to that requirement the city charter of Napa was followed, on the assumption that the charter in this respect superseded the general law and provided for a different method for the assessment of damages and benefits. As to the further procedure the general law was followed.

"Section 6 of said Street Opening and Widening Act provides: 'Having acquired jurisdiction as provided in the preceding section, the city council shall order said work to be done, and unless the proposed work is for closing up, and it appears that no assessment is necessary, shall appoint three commissioners to assess benefits and damages, and have general supervision of the proposed work or improvement until the completion thereof in compliance with this statute.' The section then provides that the compensation of the commissioners shall not exceed $200 a month and requires an affidavit and bond of each commissioner.

"Section 68 of the Napa charter provides: 'The duties of commissioners . . . under the general law in the matter of opening, extending, widening, straightening or closing streets . . . shall be performed under the direction of the councilman in charge of the department of streets and public improvement and the city attorney, neither of whom shall receive compensation therefor.'

"The city council appointed the councilman in charge of the street department and the city attorney commissioners, and each put up a bond and took oath.

"In the lower court respondents urged in support of their demurrer that 'there was nothing in the city charter, section 68, which authorized the city council to appoint commissioners; that its only authority to appoint commissioners was derived under the provisions of section 6 of the Street Opening and Widening Act of 1889; that having appointed only two commissioners instead of three as provided for by section 6 of the act of 1889 it was without jurisdiction to act upon and confirm the report of the two commissioners.' The further claim was made that the two officials appointed, especially the councilman, were disqualified to act, and, therefore, their appointment was void.

"Section 67 of said charter provides: 'Except as otherwise in this charter or by ordinance of the city provided, the general laws of the state of California, or which may hereafter be adopted by the legislature of this state, relative to . . . laying out, opening, extending, widening, straightening or closing up, in whole or in part, of any thereof; the condemning and acquiring of any and all lands necessary and convenient therefor; . . . the levying and collecting of assessments upon property for doing such improvement, or

work, or carrying out all or any such purposes . . . shall control and all proceedings shall be in conformity therewith.'

"It is admitted by appellant that the general law must apply unless said section 68 of the Napa charter was intended to supersede said section 6 of said general law and does in sufficient phraseology provide that said two city officers shall perform the work required of commissioners in 'opening, extending, widening, straightening or closing streets.' It is apparent that the words of said section 68 were not aptly chosen for the purpose of conveying the meaning that said officers should perform the duties of commissioners. If such had been the intention of the framers of the charter it is somewhat surprising that they did not so express it since it could have been done with such facility and simplicity. If the charter had provided that 'the duties of commissioners . . . shall be performed *by* the councilman,' etc., we would find just what might be expected to express the view contended for by appellant, and, of course, there would be no doubt as to the construction of the clause. It was provided, however, that these duties should be performed under the direction of these officers. The phrase presupposes that the actual work shall be done by someone else but it is to be supervised by the said city councilman and the city attorney. Webster's definition of 'supervision' is: 'The act of directing or of aiming, regulating, guiding, or ordering; guidance; management; superintendence.' If the expression were used in reference to mere manual labor there would manifestly be no doubt as to its significance. If it were provided that a certain building should be erected or a public improvement should be made under the direction of these officers it would not for a moment be contended that they should perform the actual work of construction, but it would be readily admitted that they were to direct and supervise the manner in which the work should be done by others. In the present instance it might be said that there is less reason probably for supervising the work of assessing and apportioning the benefits and damages occasioned by said improvement, and it may be said also that the change contended for by appellant may have been contemplated in order to save expense, but the fact remains that the framers of the charter have deliberately—at least we must assume that it was done deliberately—chosen language that expresses an entirely different mean-

ing.  Some reference is made by appellant to the charters of Oakland and Vallejo as indicative of a general purpose in the framing and enactment of these freeholders' charters to provide for such change.  But it is manifest that those charters come nearer to an expression of intention to vest said power in the commissioner of streets and city attorney than does the provision before us, for they expressly provide that 'no commissioners shall be appointed, and that all the duties imposed on commissioners . . . shall be performed under the direction of the commissioner of streets and city attorney of the city.'  While such expression is not altogether clear, it does at least appear that it was the intention to have no other than said officers act as commissioners.

"Of course, the rule is that 'proceedings for the improvement of streets are *in invitum* and purely statutory, and afford no opportunity for invoking any of the principles of equity and the validity of an assessment therefor depends upon a statutory power, and the party seeking the right to enforce it must show that the statutory power has been strictly followed.'  (*Warren* v. *Chandos,* 115 Cal. 382, [47 Pac. 132].)

"As to the disqualifications of these officers to act as commissioners we do not agree with respondent.  We think the contention in that respect is completely answered by the decisions in the case of *United Real Estate & Trust Co.* v. *Barnes,* 159 Cal. 242, [113 Pac. 167], to which we refer for a thorough consideration of the question.

"It may be, therefore, that these officers could constitute two of the commissioners to be appointed under the general law, but as to that we express no opinion."

It is now argued by the appellant that the allegations of the complaint relative to the appointment by the city council of commissioners to assess damages, etc., involve evidentiary matter and are, therefore, unnecessary to the statement of a cause of action in eminent domain, and may be treated as surplusage; that, so viewing those allegations, the complaint states a cause of action to condemn property for a public use, since it contains a statement of all the facts required to be shown in such an action by section 1244 of the Code of Civil Procedure, to wit: 1. The name of the owner of the property; 2. The right of plaintiff; 3. A description of the land pro-

posed to be taken and the statement that the same is a part of a larger tract described therein.

Upon further consideration of the proposition, we are convinced that the conclusion announced in our former opinion that section 68 of the charter of the plaintiff was not intended to supersede or take the place of the provisions of section 6 of the state law is correct. The language of section 68 of the charter appears to be clear as to the idea intended to be expressed thereby and its meaning is plainly this: That the duties of commissioners or other officials authorized to be appointed by the general law of the state to attend to the matter of opening, extending, widening, straightening or closing streets, etc., shall be performed by the commissioners and other officials so authorized to be appointed for that purpose under the direction of the councilman in charge of the department of streets and public improvements and the city attorney. In other words, section 6 of the statute of 1889 governs in the matter of the appointment and as to the number of the commissioners who are to assess benefits and damages in the case of the widening, extending or straightening of streets, etc., and section 68 of the charter merely provides, and was obviously intended only to provide, that the duties which the general law imposes upon such commissioners shall be performed by such commissioners under the direction of the councilman in charge of the department of streets, etc., and the city attorney.

It now remains to be seen whether the complaint, having alleged that the councilman in charge of the department of streets and the city attorney were by resolution of the council appointed commissioners to assess the benefits and damages, states a cause of action for the condemnation of property for street widening purposes; or (to state the proposition perhaps more accurately), has the plaintiff pleaded itself out of court by alleging in its complaint the fact that the said councilman and the city attorney were by the council appointed commissioners to perform the duties imposed upon the commissioners authorized and required to be appointed for the purpose of assessing benefits and damages by section 6 of the Street Widening Act of 1889?

The question thus propounded may best be answered by a brief survey of the provisions of some of the sections of said act.

We have already seen that section 6 of said act provides for the appointment of *three* commissioners for the purpose stated and in general language prescribes their duties. The succeeding sections, so far as they relate to the duties and powers of the commissioners, provide: That the commissioners shall view the lands described in the resolution of intention and, if necessary, take the testimony of witnesses, and thereupon proceed to determine the value of the land and damage to improvements and property affected; that, thereafter, having made their assessment of benefits and damages, the commissioners shall make and file with the city council a report thereof, and accompany their report with a plat of the assessment district, showing the land taken or to be taken for the work or improvement, and the lands assessed, etc.; that a copy of said report and plat, after such report and plat have been approved by the council, shall be filed by the city clerk in the office of the county recorder of the county; that the said report shall specify each lot, subdivision, or piece of property taken or injured by the widening or other improvement of the street, or assessed therefor, together with the name of the owner or claimants thereof or other persons interested as lessees or encumbrancers, etc.; that, upon the filing of said report and plat in the clerk's office of the city council, the clerk shall give notice of such filing by publication for at least ten days in one or more daily newspapers published and circulated in said city; that said notice shall require all persons interested to show cause, if any, why such report should not be confirmed, before the city council, on or before a day fixed by the clerk, and stated in said notice, etc.; that all objections shall be in writing and filed with the clerk, who shall lay the same before the council, which shall fix a day for hearing the same; that said report, having finally been confirmed, a certified copy thereof, and of the assessment and plat, shall by the clerk be forwarded to the superintendent of streets. Other provisions relative to the duties of the superintendent of streets after receiving the report, assessment, and plat, follow, but it is not important that they should be referred to here; and then comes section 18 of the act which, among other things, provides: "If any owner of land to be taken neglects or refuses to accept the warrant drawn in his favor as aforesaid, or objects to the report as to the necessity of taking his land, the

commissioners, with the approval of the city council, may cause proceedings to be taken for the condemnation thereof, as provided by law under the right of eminent domain. The complaint may aver that it is necessary for the city to take or damage and condemn the said lands, or an easement therein, as the case may be, without setting forth the proceedings herein provided for, and the resolution and ordinance ordering said work to be done shall be conclusive evidence of such necessity."

Where, in the exercise of the taxing power or the right of eminent domain, the state imposes a tax upon the property of a citizen or authorizes it to be taken for a public use, the legislature always takes the pains to point out with precision the mode and manner of exercising such power or right, and so important is the power thus to trench upon and even divest private rights to the owners of private property that the courts, in their adjudications in such cases, have always strictly applied the rule, above stated, that proceedings in street improvement, being *in invitum,* therefore the statutory requirements as to the essential steps to be taken in such proceedings must be observed with substantial strictness.. The owner of property proposed to be taken for a specific purpose, or to be taken or damaged for a public use, is entitled to have the proceedings leading to that end carried out in all vital or material respects precisely as they have by the legislature been prescribed or established.

In clothing municipal corporations with the power to widen or extend or straighten streets, the legislature has been careful to provide in detail how that character of improvement may be done so as to protect the property owner, whose property is to be affected by the improvement, against unjust deprivation of private rights or the taking or taxing of his property without a public necessity therefor, or the taking or damaging of more of his property than the requirements of the proposed improvement demand.

The ascertainment of benefits accruing, or the damage resulting to property affected by the proposed improvement by three commissioners appointed for that purpose, is a substantial and an essential step to be taken before proceedings in condemnation can be instituted or maintained against an owner of property which may be taken or damaged for the purposes of the improvement. The property owner is en-

titled to the judgment of all three of the commissioners so appointed as to the value of his property to be taken or the damage which will result thereto by reason of the improvement. It will not do to say that because, perhaps two of the commissioners, being a majority, may agree upon and make a report, the appointment of two would satisfy the requirement of the statute as to the number to be appointed and to discharge the duties imposed upon them. There are substantial reasons against such an argument. The first is that the statute expressly provides that the number of commissioners shall be three. If, in the face of this provision, the council may appoint two, why could it not with equal reason determine that the appointment of one commissioner would be sufficient and so devolve the duties of the three commissioners required by the statute to be appointed upon a single person? Again, the third commissioner's judgment and voice might be sufficiently potent to control the determination of the result of the investigation; and if there should occur a disagreement between the commissioners as to the amount of damage which would be sustained to the property to be taken—two reaching one conclusion upon that all-important question and the third another—the dissenting commissioner's views and conclusion might be such as to justify the council in ordering a reinvestigation of the questions of benefits and damage, and so finally bring about a report satisfactory to both the property owners and the city. These latter reasons merely go to the possible explanation of the underlying legislative motive in requiring three commissioners to be appointed for the purpose of performing the duties referred to; but, whatever may have been the motive in providing for three commissioners, the proposition remains that the legislature has expressly and explicitly declared that that number shall constitute the commissioners who shall perform the duty of ascertaining and admeasuring benefits and damage, and, as above stated, there is no authority in the city council to determine that that duty may or can be performed by a less or greater number of commissioners. The statute in that regard is, as before in effect declared, mandatory, and a compliance therewith is essential to the procurement of a valid report on benefits and damages, without which report and the confirmation thereof by the council, an action to con-

demn the property of a person not willing to accept the damages so appraised cannot be instituted or maintained.

Now as to the complaint. Section 18 of the statute in question provides, as we have seen, that the proceedings which are required to be taken for the widening or extending or straightening of streets need not be pleaded in a complaint in an action for the condemnation of property which is required and sought to be taken for any of the purposes mentioned, or which may be damaged by reason of such work or improvement. The plaintiff, therefore, would have stated a case in eminent domain if it had omitted any reference to the alleged appointment by the city council of commissioners to assess benefits and damage. But, as seen, the complaint alleges that the city council had appointed two commissioners to assess benefits and damages, and that the commissioners so appointed had performed the duties required of such commissioners by law and made a report which was filed, approved, and confirmed in accordance with the provisions of the general law. Thus the complaint itself affirmatively shows that the council, in the appointment of commissioners, did not follow the requirements of the general law in a vital particular, and that the work and the report of the so-called commissioners were without legal force, or, in other words, were and are wholly void. The plaintiff has thus unnecessarily pleaded itself out of court. And even if, under the circumstances, the complaint were sustained, the plaintiff (assuming, as we must, that the complaint states the truth as to the appointment of commissioners and their work as such), would fail at the trial to sustain its action by the proofs.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 1, 1918.