[Civ. No. 1798.   Third Appellate District.—June 6, 1918.]

## CITY OF PETALUMA (a Municipal Corporation), Respondent, v. ISABELLE HUGHES et al., Appellants.

STREET LAW — CITY OF PETALUMA — IMPROVEMENT UNDER STATE LAW— PRELIMINARY ORDINANCE ADOPTING PROCEDURE UNNECESSARY — CHARTER.—In the doing of street work in the city of Petaluma under the provisions of the act of March 6, 1889 (Stats. 1889, p. 70), it is not necessary that the city, prior to entering upon the work, should adopt an ordinance electing to proceed under the state law and adopting its procedure as the one to be followed in making the improvement, as section 21 of article III of the charter, requiring that such work should be done by ordinance not in conflict with state laws, must be read in connection with section 68 of the same article, which provides that in the absence of any procedure for carrying out or effectuating any granted or implied power or authority, the general law of the state shall be followed.

APPEAL from a judgment of the Superior Court of Sonoma County. Edgar T. Zook, Judge Presiding.

The facts are stated in the opinion of the court.

W. T. Mooney, T. J. Geary, and C. W. Lynch, for Appellants.

G. P. Hall, and W. F. Cowan, for Respondent.

BURNETT, J.—This is an appeal from a judgment in favor of plaintiff and against certain defendants, arising out of certain condemnation proceedings undertaken by the city of Petaluma (a municipal corporation) for the widening and extending of a certain street within its corporate limits, the undertaking being commonly known as the "Douglass Street Extension."

It is the contention of appellants (1) "that the charter of the city of Petaluma does not contain a valid system providing for the opening of streets, but it permits the city authorities, by ordinance, to adopt such a system; that the city of Petaluma never adopted any system providing for the opening of streets, and is therefore without authority to proceed."

(2) Closely allied to this is the further claim that the said proceedings taken by said municipality are void *ab initio*, for

the reason that they have been undertaken and pursued under a general law of the state of California, to wit, the act of March 6, 1889 (Stats. 1889, p. 70), which has no application to said city of Petaluma, instead of having been undertaken and pursued, as the charter requires, as hereinbefore stated.

(3) Further, that "even if we concede (which we do not) that the city had the right to proceed directly under the general law without consideration for the charter provisions cited above, the proceedings as actually taken were defective, in that there was not a posting and not a publication of the 'Notice of Public Work' in the matter given as required by the act of March 6, 1889. This being true, the city never gained jurisdiction to order the work and improvement."

(4) Defendants also raise the point that they were restrained from offering any evidence as to the assessment side of the proceedings taken, and in support thereof quote *Los Angeles* v. *Dehail,* 97 Cal. 13, [31 Pac. 626].

(5) They further contend that the trial court "practically" prejudged the controversy, before its presentation, by the use of the following language:

"The Court: You have authority to act under the general law. The supreme court has expressly held in four different cases the general law is incorporated."

The first two contentions of appellants, virtually involving the same question, may be considered together, and it is probably sufficient to say that they have been answered by the district court of appeal for the first district in the case of *In re Thomas,* 33 Cal. App. 547, [165 Pac. 1021]. Therein the learned author of the opinion, referring to sections 21 and 68 of article III of the charter of Petaluma, says: "It seems clear to us, when these two sections of the city charter of Petaluma are read together, as they must be, that no preliminary ordinance was necessary to entitle the city authorities to proceed immediately under the state law in making the street improvement under review. The city charter did not itself embrace a procedure for the doing of such work; and the only requirement of section 21 of article III of its charter is that when this character of work is to be done, it should be done by ordinances not in conflict with state laws. The particular state law adopted by the city for the purposes of this work provides that the contemplated improvement shall have its inception in an ordinance of the city, for such

the resolution of intention is, as required by said state law. The passage of an additional ordinance by the city resolving to adopt this ordinance required by the state law would be doing of an idle act; and any construction of section 21 of article III of the charter which would require the doing of such act would do violence to the intendments of section 68 of article III of the same charter.   We find no merit, therefore, in the appellant's contention in this regard."

A somewhat analogous case is *Park* v. *Pacific Fire Extinguisher Co., ante,* p. 112, [173 Pac. 615], wherein it is said: "Street lighting is a municipal affair; but the charter of the city of Berkeley, while conferring power upon the city to adopt a complete procedure for the creation of a system of street lighting, does not contain such a procedure.   This is conceded.   The city has power to provide such general scheme; but not having done so, it is governed by general law in that respect and may in this case follow the provisions of the Improvement Act of 1911.   (*Fragley* v. *Phelan,* 126 Cal. 383, [58 Pac. 923].) "

In the Fragley case it is said: "It is not within the constitutional power of the legislature, by approving a freeholders' charter which fails to make provision upon subjects pertaining to municipal affairs, to exempt that city from being subject to legislative control in reference to those subjects, nor can the city secure exemption from such control by omitting to make such provision in its charter."

The following cases are also opposed to these contentions of appellants: *Osburn* v. *Stone,* 170 Cal. 484, [150 Pac. 367]; *Clouse* v. *San Diego,* 159 Cal. 436, [114 Pac. 573]; *Hellman* v. *Shoulters,* 114 Cal. 156, [44 Pac. 915, 45 Pac. 1057].

Of course, it is fundamental that, in proceedings like this, municipalities can act legally only in strict compliance with the requirements of the statutory law, defining their activities, or to put it in the language of the decisions, that the mode is the measure of their power.

In the case of *City of Napa* v. *Maxwell,* 36 Cal. App. 103, [171 Pac. 839], the court uses the following language: "Of course, the rule is that proceedings for the improvement of streets are *in invitum* and purely statutory, and afford no opportunity for invoking any of the principles of equity, and the validity of an assessment, therefore, depends upon a statutory power, and the party seeking the right to enforce

it must show that the statutory power has been strictly followed.''

Therein, the proceedings were declared invalid because two commissioners, instead of three, were appointed as provided for by section 6 of the act of 1889, to ascertain the benefits accruing or the damage resulting to property affected by the proposed improvement.

But in the instant case no such consideration is involved. Section 2 of said act of 1889 provides: ''Before ordering any work to be done or improvement made which is authorized by section one of this act the city council shall pass a resolution declaring its intention to do so, describing the work or improvement and the land deemed necessary to be taken therefor and specifying the exterior boundaries of the district of lands to be affected or benefited by said work or improvement, and to be assessed to pay the damages, cost and expense thereof.'' Then follows a section requiring the street superintendent to post a notice of this resolution and also to publish it for ten days in a daily newspaper. The only asserted defect as to this proceeding is pointed out in the opening brief of appellants by quoting from the transcript, as follows:

''Mr. Geary: 'It may be stipulated that all the proceedings which are set out in the complaint as having been taken by the council of the city of Petaluma were in fact taken by them.'

''The Court: 'With the exception of the fact, for a portion of the time of publication, the word ''Stratton'' appeared in the notice instead of the word ''Harriman,'' and that there were not ten full days of posting or publication of the word ''Harriman'' in there.' ''

There is nothing therein to show that respondent consented to the statement of the court, and, besides, if it be regarded as a stipulation of the city of Petaluma, it is entirely unintelligible. It does not appear what difference it made whether the word ''Stratton'' or ''Harriman'' was used. It was incumbent upon appellants to set out in their brief the portions of the transcript upon which they relied to show error, the appeal being under the alternative method. (*Scott* v. *Hollywood Park Co.*, 176 Cal. 680, [169 Pac. 379].)

They should have exhibited the evidence in their opening brief, in order that respondent might have an opportunity to make suitable reply. They waited, however, until the filing of their final brief to call the attention of this court to the

entire proceeding in reference to said publication. But the record as exhibited in this final brief does not aid appellants in any manner. It does not show that the word "Stratton" or the word "Harriman" affected in the slightest degree the accuracy or sufficiency of the description of the property. As far as anything to the contrary appears, either word might have been used throughout, or both eliminated, and the full and definite information required by the statute still be contained in said publication. In other words, from the record we must assume that the clerical error was entirely immaterial and resulted in no prejudice whatever. Of course, no one would contend for the absurd proposition that an immaterial and unimportant change in the phraseology of the notice would invalidate it, the facts stated remaining essentially the same and corresponding with the requirements of the law. As to this we may adopt the language of the supreme court of Montana in reference to the publication of a notice of contemplated changes in the constitution, reported in *State* v. *Alderson,* 49 Mont. 414, [Ann. Cas. 1916B, 39, 142 Pac. 216], as follows: "Indeed, to reach the very acme of absurdity, we need only say that the rule of literal compliance requires that every word be spelled correctly, and if in the last illustration the printer inadvertently omitted the letter 'a' from the word 'measure,' and this was the only departure, the amendment would fail under the rule in question. A court which would nullify the expressed will of the people upon such a flimsy pretext as the one illustrated above would deservedly forfeit every claim to the respect or confidence of the community."

The case of *Ferri* v. *City of Long Beach,* 176 Cal. 645, [169 Pac. 385], has no application to this case. The notice therein contained the misstatement of a matter of fact. We, of course, agree that "where the statute prescribed a certain kind of notice, a court is not justified in saying some other kind of notice would be equally effective." It would be absurd to contend that notice, for instance, by mail, would answer the requisite of newspaper publication or notice by posting, but, in the instant case, no such question is involved.

As to the fourth point, it is sufficient to say that appellants' brief sets forth nothing from the transcript inviting attention even. However, the reading of the entire record discloses no such ruling as they claim. The case seems to have been tried

with exceeding care and fairness, and appellants have no just cause for complaint.

The charge that the trial judge had prejudged the cause seems particularly unfounded. The accusation apparently arises from the fact that he manifested a knowledge of the essential legal principles involved, and announced during the progress of the trial that the supreme court had made a certain decision in reference thereto. It is certainly somewhat novel that the familiarity of the trial judge with the law—however unusual it might be considered—should be the basis for criticism or animadversion.

Appellants suggest some other alleged errors, but they are not argued, and we pass them by without further notice.

The appeal seems to be entirely destitute of merit, and the judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 5, 1918.