[Civ. No. 3972. First Appellate District, Division Two.—March 8, 1922.]

## J. E. CAVANAGH et al., Respondents, v. E. S. SHAVER et al., Appellants.

[1] STREET LAW—REDEMPTION FROM SALE IN STREET OPENING PROCEEDING — AMOUNT OF PENALTY — INAPPLICABILITY OF SECTION 3779, POLITICAL CODE — CONSTRUCTION OF STATUTES.—A charge of fifty per cent penalty, as provided by section 3779 of the Political Code before its repeal in 1905, to redeem from a sale had in a street opening proceeding was unauthorized under the claim that the right to exact a penalty in such amount was saved by Statutes of 1905, chapter 177, section 1, providing that all sales and redemptions upon the assessment to pay the damages, costs, and expenses of laying out any street shall be made and had in the same time and manner as

such sales and redemptions were required to be made and had on January 1, 1895, since the saving clause does not mention penalties at all and the language of section 16 of chapter 76 of the Statutes of 1889 provides for a five per cent penalty.

[2] MONEY HAD AND RECEIVED—PLEADING—RECEIPT OF MONEY—CURE OF DEFECTIVE AVERMENT.—In an action for money had and received, the defect in the complaint in failing to clearly show that the money had been received by the defendants was cured where the answer alleged that the money had never come into the possession of the defendants and the court found that the money had been received, and no showing was made in the bill of exceptions that defendants were prevented from making a full showing on the question.

[3] ID.—EVIDENCE—ERRONEOUS JUDGMENT AS TO INDIVIDUAL DEFENDANT.—A judgment cannot be entered against a defendant either as an individual or as a city street superintendent in an action for money had and received where the undisputed evidence shows that the money was received by the successor in office, who had not been made a party to the litigation.

[4] ID.—NEW TRIAL—RECEIPT OF MONEY BEFORE SIGNING OF JUDGMENT—JURISDICTION.—Where in an action for money had and received the defendants were given judgment because of the failure to show that they had received the money, but before the judgment was signed or filed one of the defendants collected the money and retained it, the court had jurisdiction to grant a new trial.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge. Affirmed as to defendant city, reversed as to codefendants.

The facts are stated in the opinion of the court.

G. P. Hall and E. J. Dole for Appellants.

W. T. Mooney for Respondents.

STURTEVANT, J.—The plaintiffs commenced an action against the defendants to recover a judgment for money. Although the plaintiffs' complaint is out of the ordinary, it may be said to be a complaint as for money had and received. The plaintiffs had judgment in the trial court and the defendants have appealed, bringing up papers which they claim to be a judgment-roll and a bill of exceptions. No motion to dismiss has been made, neither has a suggestion of the diminution of the record been made, and we therefore treat the record as sufficient.

[1]  It was the theory of the plaintiffs in the trial court that they were called upon to pay, and that they did pay, without authority of law, a penalty of fifty per cent to redeem from a sale had in a street opening proceeding.  The appellants claim the right to collect the penalty by reason of some language contained in *section 16* of that act (Stats. 1889, p. 70) read in connection with *section 3779* of the Political Code as that statute was formerly worded.  The part of *section 16* referred to reads as follows: ''All provisions of the law in reference to the sale and redemption of property for delinquent state and county taxes in force at any given time, shall also then, so far as the same are not in conflict with the provisions of this act, be applicable to the sale and redemption of property for delinquent assessments hereunder, including the issuance of certificates and execution of deeds.''  *Section 3779* of the *Political Code* at the same time was worded as follows: ''On filing the certificate with the County Recorder, the lien of the state vests in the purchaser, and is only divested by the payment to him, or to the County Treasurer for his use, of the purchase money and fifty per cent thereon.''  But *section 3779* of the *Political Code* was repealed by *Statutes of 1895, chapter 11, section 8,* and by *chapter 218, section 59.*  However, the appellants claim that the appellants' rights to the penalty were saved by *Statutes of 1895, chapter 177,* which provides: ''*Sec. 1.*  All sales, and redemption after sale, of any real property upon which the assessment levied and assessed to pay the damages, costs, and expenses of or incident to laying out, . . . any street, . . . shall be made and had *in the same time and manner* as such sales and redemption were required by law to be made and had on the first day of January, A. D. 1895.''  It will be noted that the saving statute does not mention *penalties* at all.  It will also be noted that the language used by the legislature is quite different from the language used in the Street Opening Act of 1889.  The appellants make the claim as though the saving statute were worded as follows: ''All *provisions* of the law in reference to the sale and redemption of property for delinquent state and county taxes in force January 1st, 1895, shall, so far as the same are not in conflict with the provisions of this act, be applicable to the sale and redemption of property for delinquent assessments, etc.''  But there

is a patent difference between the language used and meaning which the appellants would attach to the language. The saving statute saves the procedure as to "time and manner," but does not purport to save a penalty of fifty per cent. It must at all times be borne in mind that tax proceedings are *in invitum* and purely statutory and afford no opportunity for invoking any of the principles of equity. (*City of Petaluma* v. *Hughes,* 37 Cal. App. 473, 475 [174 Pac. 336].) In the instant case the penalty is not specifically mentioned in the statute under which the appellant claims. In the case of *Collier* v. *Shaffer,* 137 Cal. 319 [70 Pac. 177], the court construed the provisions of *sections 3756* and *3817 of the Political Code* as those sections stood in 1889. *Section 3756* expressly provided a five per cent penalty. *Section 3817* referred to a "twenty-five per cent penalty, which may have accrued by reason of such delinquency and sale . . . " The court held that *section 3756* was the declarative law as to what penalties were imposed and that *section 3817* misused the number 25 for the number 5. The case shows that the courts have not gone out of their way to adopt a construction imposing penalties. That we should not do so in the instant case is further strengthened by provisions of *section 16* of *chapter 76* of the Statutes of 1889, which we have not heretofore referred to. The greater part of that section is taken up in providing for a *five* per cent penalty which is imposed by the terms of the statute on each delinquent assessment. If the legislature had meant to impose other penalties certainly apt words would have been used to express that meaning. On the other hand, it used language excluding such an intention. Having provided a five per cent penalty it then adopted statutes concerning delinquent state and county taxes, " . . . so far as the same are not in conflict with the provisions of this act . . . " The two expressions are not harmonious. The appellants were not entitled to charge a fifty per cent penalty and are not entitled to retain the same.

[2] The appellants in this court take the position that whether the judgment of the trial court was just or otherwise, it should be reversed for certain alleged errors. They claim that the plaintiffs' complaint did not state a cause of action; that they raised the question by demurrer and that their demurrer was improperly overruled. Their point

is this, that the complaint does not flatly allege that the defendants received the money. The complaint is certainly not very clear in this behalf, but after the demurrer was overruled the defendants filed an answer in which, among other things, they pleaded as follows: "Defendants allege that the said sum of $9,065.53 referred to in said amended complaint has never come to the possession of said defendants or to the possession of any official of said defendant, the city of Petaluma, or into the possession of anyone for or on behalf of said defendants or either of them . . . " After the trial was had the trial court made findings, "That the said sum paid by plaintiffs to said defendant E. S. Shaver as such official, on said 22d day of October, 1915, to wit, the sum of $9,065.53, was paid by them under protest and duress, and to prevent the clouding of their title to said lots; that all sums and amounts in excess of $5,727.64 exacted by defendant E. S. Shaver as such official, of plaintiffs, and paid under protest by them to said defendant, were and are illegal." And thereupon the trial court awarded judgment for the difference, to wit, $3,337.85. In the bill of exceptions there is no showing or attempt to show that the trial court prevented the appellants from making a full and complete showing on the question of receiving or not receiving money. Conceding that the plaintiffs' complaint was not as broad as it should have been, the defect was cured by the answer of the defendants, and the record shows that the defendants were not prejudiced. (Code Civ. Proc., sec. 475.)

The record shows that the money was not received on October 22, 1915, but that it was received on July 6, 1918. The record does not show when the action was commenced; but it does show that the action was commenced before July 6, 1918. The appellants strenuously contend that the action was prematurely commenced, and that the judgment should be reversed. Conceding that the action was prematurely commenced, but examining the whole record, it is patent that the rights of the appellants were in·no manner prejudiced because of that fact. We think that the judgment should not be reversed because of alleged errors which were not prejudicial. (*Mahony* v. *Standard Gas Engine Co.,* 187 Cal. 399 [202 Pac. 146].)

[3] The appellants assert that the evidence does not show that the money alleged to have been deposited in bank ever came to the hands of the defendants, or either of them, or was ever claimed by them or either of them. In so far as E. S. Shaver, or E. S. Shaver, as superintendent of streets, is concerned, the contention is well founded. As to the city of Petaluma, the contention is not sustained by the record. The certificate of deposit was offered in evidence and on it appears the indorsement, "Paid 7/6/18," and also the indorsement, "James A. Potter, Superintendent of Streets and Street Superintendent of the City of Petaluma and successor in office to E. S. Shaver." During the second hearing the question of the payment of the certificate being under discussion, Mr. Hall, attorney for the appellants, admitted that the certificate of deposit had been paid after the judgment in the Hickey suit, which judgment held that the tender was good. It is therefore clear that the city of Petaluma received the money although it is equally clear that the defendant E. S. Shaver did not receive it. He had gone out of office and his successor in office received the money, but the successor in office has not been made a party to this litigation. As he has not been made a party he has not had his day in court and no judgment should have been entered as against Potter. As the record does not show that Shaver received any part of the money, no judgment should have been entered as against him.

The appellants claim that the deposit was not made under duress. We think they are mistaken. True, the title of the plaintiffs had already been clouded at the time of the tender. But in the absence of the payment, the plaintiffs' title would have been permanently lost.

[4] The appellants claim that the trial court had no jurisdiction to grant a new trial. In making this contention we understand them to rely upon the rule stated in *Gray* v. *Cotton,* 174 Cal. 256 [162 Pac. 1019], and *Stow* v. *Superior Court,* 178 Cal. 140 [172 Pac. 598]. We think that this case is not controlled by either of said cases, but that the latter case is more nearly in point, and in that event the trial court did not exceed its jurisdiction in granting the so-called motion for a new trial. It might be better said that the trial court was merely remarking that it took a different view of the pleadings than it entertained on a

previous date, and was hearing the case for the first time; or, to put it another way, that it had inadvertently exceeded its jurisdiction on the former occasion when the plaintiffs were not awarded a trial, and that the matter was being cured by having a formal trial on the latter date. The first step in the proceedings is, by one of defendants' attorneys, called a motion for judgment on the pleadings, by another of defendants' attorneys it is called a motion for a nonsuit. It is not clear that the first trial was not a trial on the merits. True, the plaintiffs had not alleged "that the defendants had and received" any money; but the defendants, in their answer, inserted an allegation that they had not "had and received the money." The averment of the answer was deemed denied by virtue of the provisions of section 462 of the Code of Civil Procedure. In the face of such a record the defendants had no right to move for judgment on the pleadings. (*McGowan* v. *Ford,* 107 Cal. 177 [40 Pac. 231].) To avoid the rule in that case the defendants at the hearing on April 11, 1918, made certain statements to the trial court which were taken and acted on as evidence. The trial court so considered the record as appears from the record. These, and other matters, tend to show a trial of the case on its merits. (Code Civ. Proc., sec. 582.) Moreover, we are of the opinion that the appellants are not in a position to press this point. It is shown by the record that on April 11, 1918, the cause was called for trial. At that time the appellants took the position as stated by the judge of the trial court: "Shaver has never gotten it and he says he has never gotten it, does not want it, would not have it. It appearing that the defendants each and all disclaimed any interest whatever in the fund," etc. Judgment was thereupon ordered in favor of the defendants. Before the judgment was signed or filed, to wit, on July 6, 1918, the city officials proceeded to collect the money and have ever since retained it. In view of the acceptance of the moneys by the defendant city, we think the city is not prejudiced when it is denied permission to change its position back to where it originally stood.

The foundation was very imperfectly laid for the introduction in evidence of the certificate of deposit, but the objection to its introduction was equally faulty. The proceedings

were as follows: "Mr. Mooney: I have also here a certificate of deposit which was made by the plaintiffs in this action and which has since been cashed in by the city. Is there any objection to that? Mr. Dole: That is objected to as incompetent, irrelevant, immaterial, and hearsay. . . . The Court: I do not think it is hearsay." We find nothing in the record as to the proof of signatures on the certificate but such objection was never made nor called to the attention of the trial court. The appellants therefore are not entitled to have this court consider matters which were never before the trial court.

No other points are made which call for our consideration. The judgment as to E. S. Shaver and E. S. Shaver as superintendent of streets is reversed, and the judgment as to the city of Petaluma is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 4, 1922.

All the Justices concurred except Waste, J., who was absent.

Richards, J., *pro tem.*, who was acting, dissented. Wilbur, J., likewise dissented and filed the following opinion:

WILBUR, J., Dissenting.—I dissent from the order denying a transfer, on the ground that the fifty per cent penalty provided by section 3779 of the Political Code is still applicable to sales for delinquent assessments for the opening of streets under the Street Opening Act of 1889 (Stats. 1889, p. 70). Section 16 of that act provides for the sale of the assessed property in the same manner as is or may be provided for the collection of state and county taxes. It is also provided: "All property sold shall be subject to redemption in the same time and manner as in sales for delinquent state and county taxes; and the superintendent of streets may collect for each certificate fifty cents, and for each deed one dollar. All provisions of the law, in reference to the sale and redemption of property for de-

linquent state and county taxes in force at any given time, shall also then, so far as the same are not in conflict with the provisions of this act, be applicable to the sale and redemption of property for delinquent assessments hereunder, including the issuance of certificates and execution of deeds.''

Section 3779 of the Political Code as it existed at the time of the enactment of the Street Opening Act, *supra,* provided: ''On filing the certificate with the county recorder, the lien of the state vests in the purchaser, and is only divested by the payment to him, or to the county treasurer for his use, of the purchase money and fifty per cent thereon.'' Section 3780 of the Political Code fixed the time for redemption as twelve months from the date of purchase ''or at any time prior to the giving of the notice and the application for a deed, as provided for in section thirty-seven hundred and eighty-five of this code.'' Section 3785 provided that in order to terminate the right of redemption the purchaser must give thirty days' notice before he applies for a deed, in which he was required to state, among other things, the amount then due. This amount included the fifty per cent authorized by statute (*Reed* v. *Lyon,* 96 Cal. 501, 502 [31 Pac. 619]). The redemption must be made in gold or silver coin (Pol. Code, sec. 3781). ''The redemption is effected by the payment of the money, and the taking of the receipt.'' (*Cooper* v. *Shepardson,* 51 Cal. 298.)

It would seem clear that the manner of making a redemption is by payment to or for the purchaser of the amount for which the property was sold, plus fifty per cent and such costs as were authorized by law. Assuming for a moment that the Statute of 1895 revising the whole system of sales and tax redemptions (Stats. 1895, p. 19), containing the express repeal of section 3779 of the Political Code, so affected the Street Opening Act of 1889, that the law of 1895 (page 204), intending in part at least to make the new system of collecting taxes inapplicable to the collection of delinquent assessments under the Street Opening Act of 1889, is the only basis for charging the fifty per cent penalty, the question is whether this and the saving Statute of 1895 (Stats. 1895, p. 204) still required the payment of the fifty per cent penalty for redemption. That statute provides (Stats. 1895, p. 204): ''All sales, and redemptions after

sale, of any real property upon which the assessment levied and assessed to pay the damages, costs, and expense for or incident to laying out, opening, extending, widening, straightening, diverging, curving, constructing, or closing up, in whole or in part, any street, square, lane, alley, court, or place within municipalities in this State, shall remain unpaid and become delinquent under the provisions of any Act or law regulating such matters, shall be made and had in the same time and manner as such sales and redemption were required by law to be made and had on the first day of January, Anno Domini eighteen hundred and ninety-five.''

Thus, as applied to redemptions the statute provides that all redemptions ''shall be made and had in the same time and manner as such sales and redemption were required by law to be made and had on the first day of January, Anno Domini eighteen hundred and ninety-five.'' The question then is whether the manner of redemption included the payment of the fifty per cent penalty. It would seem fairly clear that as the redemption was affected by the payment of the amount due to the purchaser, that if the manner of redemption was to be the same, both before and after the amendments to the law relating to collection of state and county taxes, that such payment would still be required notwithstanding the repeal and amendments to the various sections of the code involved in the new scheme of tax sales.

We have so far assumed that the Statute of 1895, repealing section 3779 of the Political Code, affected the right of the purchaser under a sale made for an assessment for the opening of a street, but the logical result of the decision of this court in *Ramish* v. *Hartwell,* 126 Cal. 443 [58 Pac. 920], is that the Statute of 1895 did not affect the Street Opening Act of 1889 in so far as it adopted the provisions of the general system for the sale for delinquent taxes. It will be observed that the Statute of 1889 adopts and makes a part of that statute the general scheme for the collection of delinquent state and county taxes. The exact language of the provision will be considered later. The case of *Ramish* v. *Hartwell, supra,* dealt with a similar provision of the Bond Act of 1893 (Stats. 1893, p. 33), which statute provided in section 5 for the adoption of the general plan

for the collection of delinquent bonds "in all respects the same as are provided by law for the collection of delinquent state and county taxes." Thereafter the general law was amended by the Statute of 1895 (page 19), now under consideration, and the city treasurer refused to proceed in accordance with the provisions of the code concerning the collection of state and county taxes in effect before the amendments of 1895. The court held that the amendments of 1895 were inapplicable to the proposed sale for delinquent bonds and for that reason the Revised Statute with reference to the collection of state and county taxes did not apply to the collection of delinquent street bonds. In that regard the court stated:

"In 1895 (Stats. 1895, p. 327), section 3771 of the Political Code was amended by providing that, instead of selling the land at auction, the property upon which the taxes are delinquent 'shall by operation of law and the declaration of the tax collector be sold to the state, and said tax collector shall make an entry "Sold to the state" on the delinquent assessment list opposite the tax.' It is contended by the appellants that by this amendment to the Political Code its provisions are *ipso facto* incorporated into the act of February 27, 1893, and that the city treasurer can proceed only in accordance with the provisions of the Political Code, as thus amended.

"It is a rule of statutory construction that the adoption in one statute, for the purpose of carrying its provisions into effect, of the provisions of another statute by reference thereto, does not include subsequent modifications of these provisions in the statute referred to, unless a clear intent to do so is expressed. This rule is subject to a qualified exception in cases of the adoption into a special act of the provisions of law then in force by virtue of general laws. In such cases, subsequent modifications of the general law will be deemed to be within the intent of such adoption, so far as they are consistent with the purposes of the particular act. (See *Kirk* v. *Rhoads*, 46 Cal. 403.) *A repeal of the adopted statute will not take from the adopting statute the operative force of these provisions, so far as they may be necessary to carry the later statute into effect, but these provisions will be regarded as if they had been originally incorporated therein at length. (Spring Valley Waterworks* v. *San Francisco,*

22 Cal. 434; *People* v. *Clunie,* 70 Cal. 504 [11 Pac. 775];
*Collins* v. *Blake,* 79 Me. 218 [9 Atl. 358]; *Darmstaetter* v.
*Maloney,* 45 Mich. 621 [8 N. W. 574]; Sutherland on
Statutory Construction, sec. 257.) Under the same prin-
ciples, any amendment of these provisions of the statute
thus adopted, whether it be a particular act or a general
law, which *so far modifies them as to subvert the purpose of
the statute by which they were adopted, will be regarded in
the same light as a repeal.* The main object of all statutory
construction is to ascertain the legislative will, and, as it
is to be assumed that the legislature intends its acts to have
effective operation, such amendments will not be construed
as depriving the adopting statute of all effect, unless there
is a clear necessity for such construction.

"A comparison of the act of 1893 with the provisions of
the Political Code, as amended in 1895, shows that the pro-
visions in the latter as thus amended are entirely inap-
plicable to the former, and ineffective to carry its objects
into effect. The provision in section 5 above quoted was to
enable the contractors to receive the amount of the as-
sessment as the several installments should mature, and to
provide means for enforcing its collection in case of de-
linquency. The provision for a sale of the land at public
auction to anyone who would pay the assessment, with the
right in the contractor to become such purchaser, was an effi-
cient mode of securing such payment, but if, instead thereof,
the land should be struck off to the state with no power for
its sale within five years, and no fund from which to pay
the amount for which the sale was made, there would be
no means by which the contractor could receive his pay-
ment, and the entire purpose of the act would be frustrated.
We hold, therefore, that the above amendments to the Po-
litical Code in 1895 are inapplicable to the provisions of the
act of February 27, 1893, and that the sale of land for de-
linquency in the payment of the bond is to be made accord-
ing to the provisions of the law for the collection and en-
forcement of taxes at the date of the act." (Italics ours.)

It follows, then, that the express repeal of section 3779
of the Political Code, imposing a penalty of fifty per cent,
if theretofore applicable to the proceedings for the sale of
property for delinquent street opening assessments by reason
of the incorporation by reference of such Political Code pro-

visions in the Street Opening Act of 1889, did not operate
upon or render inapplicable its provisions as affecting sales
for delinquent street opening assessments. It seems to be
conceded that section 16 of the Street Opening Act of 1895 as
originally enacted (Stats. 1889, p. 73) provided for the
penalty of fifty per cent in cases of redemption. If so, the
authority for its imposition is contained in the following
sentences of section 16: "All property sold shall be subject
to redemption in the same time and manner as in sales for
delinquent state and county taxes; and the superintendent of
streets may collect for each certificate fifty cents, and for
each deed one dollar. All provisions of the law, in reference
to the sale and redemption of property for delinquent state
and county taxes in force at any given time, shall also then,
so far as the same are not in conflict with the provisions of
this act, be applicable to the sale and redemption of property
for delinquent assessments hereunder, including the issuance
of certificates and execution of deeds." If the first sentence
requires the payment of the penalty it is because the "man-
ner" of redemption incorporates the idea of the fifty per
cent penalty, and if that is true there is no difficulty in con-
cluding that the penalty is still imposed, because, as already
stated, the saving act of 1895 (Stats. 1895, p. 204) expressly
provides that as to the manner of redemption the statute in
force January 1, 1895, remains in force with relation to the
street opening assessments.

If the requirement for the payment of the fifty per cent
penalty is found in the next sentence, "All provisions of
the law, in reference to the sale and redemption of property
for delinquent state and county taxes in force at any given
time," etc., incorporated by reference section 3779 of the
Political Code, we have to determine whether upon the prin-
ciple stated in *Ramish* v. *Hartwell, supra,* the amendment
of 1895 renders inapplicable the fifty per cent penalty. It
is true that the Street Opening Act (sec. 16), above quoted,
differs in the terms by which it makes applicable to the
street opening assessment sales the general scheme for sales
for delinquent state and county taxes, and that interpreted
in the case of *Ramish* v. *Hartwell, supra,* for the reason
that the provision for the sale for the street opening as-
sessments provides that the scheme for "the sale and re-
demption of property for delinquent state and county taxes

*in force at any given time,* shall also then, *so far as the same are not in conflict with the provisions of this act,* be applicable," etc.   (Italics ours).

It would follow that the new scheme for the collection of state and county taxes would apply "so far as the same are not in conflict with the provisions of this act," but, as stated in *Ramish* v. *Hartwell, supra,* the new scheme for the collection of delinquent state and county taxes by a sale to the state is thoroughly inconsistent with the system of sales at public auction to the highest private bidder for cash.   In the one case the entire property is sold to the state for the tax, subject to a five-year redemption; in the other case only so much of the property as is necessary to pay the delinquent assessment is sold and then to the private bidder who accepts the smallest part of the property and pays the assessment.   The new scheme of tax sales in its entirety is inapplicable to and inconsistent with the scheme of sales to private individuals provided by the Street Opening Act (*Ramish* v. *Hartwell, supra*), and for that reason, under the express terms of the Statute of 1889, is not applicable to the sale and redemption of the property for delinquent street opening assessments.

Richards, J., *pro tem.,* concurred.