[No. 12984. In Bank. — May 26, 1891.]

## JAMES H. BARRY, APPELLANT, v. W. F. GOAD ET AL., RESPONDENTS.

SCHOOL FUND — POWER OF BOARD OF EDUCATION. — The board of education of the city and county of San Francisco is a creature of the legislature, and has only such powers as have been conferred on it, and has no authority to divert the moneys of the school fund to any purposes other than such as have been expressly authorized by law.

ID. — UNAUTHORIZED EMPLOYMENT — INSPECTING TEACHERS. — The power of the board of education of the city and county of San Francisco to employ "teachers" for the public schools confers upon them no authority to employ "inspecting teachers," whose duties, under the resolution appointing them, in no respect pertain to instruction, but are simply those which would pertain to a superintendent or director of the several schools to which their attention is directed.

ID. — RIGHTS OF TAX-PAYER — INJUNCTIONS — RESTRAINING ILLEGAL DRAFTS. — A resident and tax-payer may maintain an action to restrain the board of education of the city and county of San Francisco from drawing drafts for compensation for services rendered and to be rendered under an appointment from the board which is unauthorized by law.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Otto tum Suden,* and *Horace W. Philbrook,* for Appellant.

The board of education of the city and county of San Francisco is a creature of the statute, and has only those

powers which the statute has expressly conferred upon it, and such implied power as is necessary to the exercise of the powers expressly conferred. (*Boys' and Girls' Aid Soc.* v. *Reis*, 71 Cal. 632, 633; *Stevenson* v. *School Directors*, 87 Ill. 255; *Tripp* v. *School District*, 50 Wis. 655; *Greathouse* v. *Dunn*, 60 Cal. 311; 1 Dillon on Municipal Corporations, secs. 23, 24, 89, 91; Cooley's Constitutional Limitations, 194.) The board has power to employ only mechanics and laborers (Statute of April 27, 1863, sec. 2; Stats. 1863, p. 601; Worley's Consolidation Act, 59); teachers, janitors, and school-census marshals (Statute of April 27, 1863, sec. 2; Statute of April 1, 1872, sec. 1; Stats. 1871–72, p. 846; Worley's Consolidation Act, 171); and counsel (Statute of April 27, 1863, sec. 2; Worley's Consolidation Act, 60.) The board cannot employ any other persons whatever than those named. (*Greathouse* v. *Dunn*, 60 Cal. 311.) The only personal services that can be paid for out of the school fund are for teachers, janitors, school-census marshals, mechanics, and laborers, and special counsel. (Statute of April 27, 1863.) The board is expressly prohibited from unauthorized expenditures. (Consolidation Act, secs. 97, 98; Stats. 1856, p. 174; Worley's Consolidation Act, 29, 30.) This provision applies to all the amendments to the Consolidation Act. (*Cashin* v. *Dunn*, 58 Cal. 582.) The fact that the defendants are called "inspecting teachers" does not make them teachers, but in determining the question only the services they are employed to perform is to be considered, the name by which they are called being immaterial. (*Delano Land Company's Appeal*, 103 Pa. St. 354; *Hudepohl* v. *Mining and Water Co.*, 80 Cal. 558; *Carpenter* v. *Superior Court*, 75 Cal. 600; Bouvier's Law Dict., ed. of 1883, tit. Statute; Pol. Code, sec. 16; 1 Kent's Com. 462.) A teacher is a person employed exclusively in teaching pupils, and under the law of California the pupils must be between the ages of six and twenty-one years. (Pol.

Code, secs. 1662, 1665–1667, 1696, 1702; Statute of April 1, 1872, sec. 3, subd. 4; Stats. 1871–72, p. 846; Worley's Consolidation Act, 171.) The duties of the board of education and school directors are the duties which they have assumed to employ the so-called "inspecting teachers" to perform. (Statute of April 1, 1872, sec. 1; Stats. 1871–72, p. 846; Worley's Consolidation Act, 171.) The board cannot delegate its powers to any other persons. (1 Dillon on Municipal Corporations, secs. 96, 97; *Perot* v. *Philadelphia*, 11 Phila. 181; *Delano Land Company's Appeal*, 103 Pa. St. 353.) A tax-payer may restrain any illegal action which would increase the burden of taxation. (*Gibson* v. *Supervisors*, 80 Cal. 366; *Andrews* v. *Pratt*, 44 Cal. 309; *Schumacker* v. *Toberman*, 56 Cal. 508; *Maxwell* v. *Supervisors*, 53 Cal. 389; *Foster* v. *Coleman*, 10 Cal. 278; *Colusa Co.* v. *De Jarnett*, 55 Cal. 373; High on Injunctions, 2d ed., sec. 1269.)

*Joseph Rothschild*, for Respondents.

The drawing of drafts upon the school fund by the board of education in payment of the claims of the defendants cannot be restrained at the instance of a tax-payer. (*Linden* v. *Case*, 46 Cal. 171; *Trinity Co.* v. *McCammon*, 25 Cal. 117; *McCoy* v. *Briant*, 53 Cal. 248.) The board had the power to employ the defendants as inspecting teachers to perform the duties provided by the resolution adopted by the board.

HARRISON, J. — The plaintiff, a resident and tax-payer of the city and county of San Francisco, brought this action for the purpose of restraining the board of education of said city and county from drawing any draft upon the school fund in favor of the defendant ennedy and Fowler in compensation for services rendered and to be rendered under an appointment from said board, upon the ground that such appointment was unauthorized by law. In their answer to the complaint the defendants set forth the order under which they allege

that the said Kennedy and Fowler were employed, in which is specified in detail the duties required of them. Upon the trial of the cause the court made the following findings of fact: "1. That the allegations in plaintiff's complaint are not sufficient in law to entitle plaintiff to any relief or any judgment; 2. That all the affirmative allegations in defendants' answer are true"; and thereupon rendered judgment in favor of the defendants.

The board of education of the city and county of San Francisco is a creature of the legislature, and has only such powers as have been conferred upon it. It has no authority to divert the moneys of the school fund to any purposes other than such as have been expressly authorized by law. By the act of April 1, 1872 (Stats. 1872, p. 846), defining the powers and duties of the board, it is declared: —

" Sec. 1. The board of education of the city and county of San Francisco shall have power: . . . . 3. To employ and dismiss teachers, janitors, and school-census marshals, and to fix, alter, allow, and order paid their salaries or compensation."

The board is also authorized "to employ and pay such mechanics and laborers as may be necessary to carry into effect the powers and duties of the board," and "to employ and pay counsel" for the purpose of prosecuting and defending actions relating to the property of the school department. (Stats. 1864, p. 162.)

Section 15 of the act of April 27, 1863 (Stats. 1863, p. 605), declares that the school fund of the city and county of San Francisco "shall be kept separate and distinct from all other moneys, and shall only be used for school purposes under the provisions of this act"; and section 16 of the same act declares: "The said school fund shall be used and applied by said board of education for the following purposes, to wit: 1. For the payment of the salaries or wages of teachers, janitors, school-census marshals, and other persons who may be employed

by said board." The "other persons" herein referred to
are "mechanics and laborers," and the "counsel" au-
thorized by section 2 of the same act as amended in 1864.
(Stats. 1864, p. 162.) Aside from these provisions we
have not been cited to any statute which authorizes the
board to employ any person in any capacity other than
those above mentioned, or to direct payment out of the
school fund for any services other than such as may
be rendered under the above-named employments.

It is alleged by the defendants in their answer herein
that on or about the twentieth day of March, 1883, the
board of education of the city and county of San Fran-
cisco adopted a resolution to appoint and employ, and
did appoint and employ, the defendant Laura T. Fowler
inspecting teacher, and in said resolution it was provided
that the special duty of such inspecting teacher should
be to "visit schools and ascertain by frequent oral ex-
aminations the condition of the classes; to observe care-
fully the methods of teaching and discipline pursued by
the teachers; to give advice and assistance to teachers
and principals when necessary, and in their presence
and before their classes exemplify the best method of
teaching; that the inspecting teacher shall be subject to
the direction of the superintendent and deputy superin-
tendent of public schools for the accomplishment of a
careful, efficient, and thorough inspection of the schools,
under such further direction or instructions as may from
time to time be given by the committee of classification
and credential and qualification of teachers, subject to the
approval of the board, at a salary of $175 a month," and
that this was the only order under which the defendant
Fowler was employed by said board; that on or about
the 5th of January, 1887, it appointed and employed the
defendant Kennedy as head inspecting teacher of the
public schools of said city and county, at a compensa-
tion of two hundred dollars per month, and that said
defendants Kennedy and Fowler have ever since been

engaged in the performance of their duties under said employment. This averment by the defendants of the resolution or order under which the defendants Kennedy and Fowler are employed by the board of education is substantially the same as that alleged in the complaint, and is treated in the briefs upon both sides as expressing the duties required of said defendants under their employment by the board.

It is contended by the respondents that under its power to employ "teachers" for the public schools the board had authority to employ Kennedy and Fowler as "inspecting teachers" to perform the duties provided by the resolution under which they were appointed; and that these duties are peculiarly such as appertain to the functions of a teacher. On the other hand, it is claimed by the appellant that the duties required of these "inspecting teachers" are precisely such as the statute has imposed upon the superintendent of schools and the board of education itself, and that the board cannot, by merely giving its appointees the title of "inspecting teachers," transfer to them the duties which the statute has imposed upon itself, or upon the superintendent.

Section 3 of the act of April 1, 1872 (Stats. 1872, p. 848), declares that "it shall be the duty of the superintendent of common schools of the city and county of San Francisco,—1. To visit and examine every school under the board of education as often as once in every six months; to inquire into all matters relating to the government, course of instruction, books, studies, discipline, and conduct of such schools; . . . . and to counsel with and advise the teachers in relation to their duties, the proper studies, discipline, and conduct of the pupils, the course of instruction to be pursued, and the books of elementary instruction to be used; . . . . and to make a monthly report to the board of education, stating which schools have been visited by him, and adding such comments in respect to the matters here

specified as he may deem advisable "; and by the first
section of said act the board of education is authorized
"to establish and regulate the grade of schools, and de-
termine the course of studies and the mode of instruc-
tion to be used in said schools."

It is apparent, upon a comparison of the provisions
of these statutes with the resolution defining the duties
of inspecting teachers, under which the defendants Ken-
nedy and Fowler were employed, that the special duties
which these inspecting teachers are to perform are such,
and such only, as the statute has prescribed as a portion
of the duties of the superintendent, and of the board of
education. Aside from the normal schools, which it is
the duty of the board to provide " for the instruction of
those who desire to become teachers," the only " teach-
ers " which it has the power to employ are those whose
duties are to instruct the children (between the ages of
six and twenty-one), for whose benefit the public schools
are maintained. The duties, however, which, under the
resolution authorizing their appointment are required of
the inspecting teachers, in no respect pertain to instruc-
tion, but are simply those which would pertain to a
superintendent or inspector of the several schools to
which their attention is directed.

The action of the board cannot be upheld upon the
ground that its appointees are termed "inspecting teach-
ers," if in fact their duties are those of "inspectors,"
rather than of "teachers." The character of the ap-
pointees must be determined from the functions which
they are to discharge, and not from the name by which
they are called. As is conceded by counsel for respond-
ents in his brief, "it is by the resolution appointing
them and defining their duties that their *status* must be
determined." If the duties which they are to perform
are those of a superintendent, it is immaterial whether
they are styled superintendent or inspector or inspecting
teacher.

It needs no argument to show that the board cannot transfer to its own appointees the duties that the statute has devolved upon another officer, or appropriate any portion of the school fund to a payment for services that the legislature has declared shall be rendered by the board itself without compensation, or be performed by the superintendent as a part of the duties for which he was elected. The statute allows to the superintendent only one deputy, and his compensation cannot be paid out of the school fund. (Pol. Code, sec. 1549.) If the board can appoint persons under the name of inspecting teachers to perform the duties which appertain to the office of the superintendent or of his deputy, and cause their compensation to be paid out of the school fund, it would thus indirectly do that which is forbidden by statute.

We fully recognize the force of the argument on behalf of the respondents, that great advantage would accrue to the public schools from the services of competent persons appointed to discharge the duties specified in this resolution of appointment, and we readily concede that the board in making the appointment was prompted solely by its desire to increase the efficiency of the school department. It is also easily perceived that the services of capable persons in the discharge of the duties required under this resolution would be of great aid to the board in remedying any defects that might be found to exist in the conduct of the schools, and in increasing the efficiency of the teachers in giving instruction to their pupils. The board of education is, however, in the exercise of a public trust, limited by the act under which it was created, and with only such powers as the legislature has seen fit to confer. If by experience it has found that these limitations are too great, or that the powers conferred are insufficient to enable it to properly discharge its trust, the board is not at liberty to disregard the limitations, or to exercise

powers not conferred upon it. The remedy for these defects must be sought from the legislature.

The objection that the plaintiff cannot maintain this action for the reason that he does not show that he will sustain any special injury different from that of the public at large is untenable. (*Winn* v. *Shaw*, 87 Cal. 631.)

The judgment of the superior court is reversed, and that court is directed to enter judgment for the plaintiff in accordance with the prayer of his complaint.

DE HAVEN, J., PATERSON, J., GAROUTTE, J., BEATTY, C. J., and SHARPSTEIN, J., concurred.