[L. A. No. 2503.   Department Two.—March 8, 1911.]

## J. E. CLOUSE et al., Respondents, v. CITY OF SAN DIEGO and DANIEL POTTER, City Auditor, Appellants.

MUNICIPAL CORPORATIONS—CHARTER OF SAN DIEGO—SALE OF BONDS FOR ROADS AND BOULEVARDS—ACT OF 1901—VOID ORDINANCE—INJUNCTION BY TAXPAYERS.—The city of San Diego, after voting for bonds under the act of February 25, 1901, for the building, construction, and acquisition of designated roads and boulevards, and selling the same, had no power under its charter to pass an ordinance authorizing the board of public works to expend such moneys in employing teams and men for the construction thereof, without previous advertisement and the letting of contracts therefor to the lowest bidder, as required by the provisions of said act of 1901; and taxpayers of the city of San Diego may properly maintain an action to enjoin such unauthorized action, as inconsistent with the terms of that act.

ID.—SILENCE OF CHARTER AS TO DISPOSITION OF REVENUES FOR CITY IMPROVEMENTS—SUBJECTION TO · GENERAL LAWS.—Although the charter of San Diego authorizes it in general terms to incur bonded indebtedness, under the terms of the general law applicable thereto, yet it being silent, upon the subject of its power to devote its ordinary revenues to street improvements, and leaving that matter to the general law, it cannot claim to be exempt from general laws relating to the expenditure of bonded indebtedness incurred under the General Bonding Act of 1901.

ID.—CITY WHEN SUBJECT TO GENERAL LAWS AS TO MUNICIPAL AFFAIRS.— A city cannot claim to be exempt from general laws relating to municipal affairs, if there is no provision relating to such affairs in the charter under which it is acting, whether such charter is one framed by itself, or was given to it by the legislature.

ID.—EXPENDITURE OF BOND MONEY LIMITED TO TERMS OF ACT.—There being no mode provided in the charter of San Diego for the expenditure of the bonded indebtedness authorized and voted for by the city under the Bonding Act of February 25, 1901, that act must be followed, and the work must be done according to contract, as therein commanded.

Id.—Rights of Citizens and Taxpayers to Maintain Action.—It is not essential to the rights of citizens and taxpayers to maintain an action to enjoin an illegal expenditure of public funds, that they must show a special injury peculiar to themselves.  It is sufficient that the mode contemplated might be expensive and wasteful, and that contractors capable of giving the best service might be precluded from participating in the effort to secure contracts to do the work.  This would give the plaintiffs sufficient standing to maintain the action.

APPEAL from a judgment of the Superior Court of San Diego County.  T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

W. R. Andrews, for Appellants.

Haines & Haines, for Respondents.

MELVIN, J.—This is an appeal from a judgment on the pleadings after defendant's refusal to amend its answer to which a demurrer had been sustained.

The city of San Diego had sold bonds and the proceeds of the sale were to be used for certain purposes including the building, construction, and acquisition of designated roads and boulevards.  After the sale of the bonds and before the commencement of this action an ordinance was adopted whereby the board of public works of the city of San Diego was authorized "to employ men and teams by the day and to purchase all necessary material for the construction of all of said boulevards, roads and like, except the boulevards to be constructed in the Fourteen Hundred Acre Public Park."  Respondents sued as taxpayers to restrain the board of works from the expenditure of the money derived from the sale of said bonds except upon contracts awarded according to the provisions of section 9 of the act of 1901 which had been followed in voting for the authorization of the bonds.  (Stats. 1901, p. 30.) Plaintiffs contended that the ordinance was void so far as it provided the manner of doing the work and purchasing material without previous advertisement and the letting of contracts, because it was inconsistent with the provisions of the said act of 1901.

After demurrer to the complaint, which was overruled, de-

fendant answered, averring that the indebtedness for the work in question was authorized at a bond election held under the provisions of its own charter and not under those of the act of 1901 above mentioned, although admitting that said indebtedness was incurred according to the manner prescribed in said general statute; asserting that the ordinance in question was adopted by due authority of law; and as a separate defense alleging on information and belief that plaintiffs were contractors acting in collusion to the end that some of them might obtain contracts to do the work in question and derive large profits therefrom. A general demurrer to this answer was sustained, and, defendants declining to amend, judgment went for plaintiffs, and the city of San Diego and its officers were perpetually enjoined from expending any of the sums which had been realized from the sale of bonds in the manner indicated by the municipal ordinance.

Appellants invoke section 13 of chapter 2 of article VI of the charter of San Diego in support of its assertion that the charter gives the city power to incur bonded indebtedness. The provision cited is as follows:—

"Whenever the common council shall determine that the public interest or necessity demands the acquisition, construction, or completion of any municipal buildings, bridges, sewers, waterworks, water-rights, reservoir-sites, rights of way for pipes, acqueducts, flumes or other conduits, or any other property or appliances suitable or proper for supplying said city or its inhabitants with water, or other municipal improvements, the cost of which will be too great to be paid out of the ordinary annual income and revenue of said city, the said common council may contract bonded indebtedness for said purposes, or any of them, and the proceedings taken for incurring such indebtedness shall be in accordance with the mode and manner prescribed by the provisions of the general laws of the state of California, relative to incurring bonded indebtedness by municipalities, in force at the time such proceedings are taken. Said common council may also contract bonded indebtedness for any other purpose authorized by this charter or the general laws of the state of California; *provided,* that the proceedings taken therefor shall be in accordance with the provisions of the general law in force at the time such proceedings are taken."

The contention is made on behalf of appellants that this section is broad enough to confer authority to create the indebtedness; that although the *method* of securing the money is that prescribed by the general law, *the power itself* comes from the charter and relates to a "municipal affair" over which general statutes have no control (Const., art. XI, sec. 6) ; and that the expenditure of the fund for the purposes of road making and the like being also a "municipal affair" the manner of securing and paying for material and labor to be used in such improvements is not subject to the direction of general statutes in cases where municipal ordinances have been made applicable.

Respondents admit that in a general sense street improvement is a "municipal affair" but they assert that in this case, where the charter is silent upon the subject of power to devote the ordinary revenues of the city to street improvements and leaves that matter in the Vrooman Act, the expenditure of this money is not a "municipal affair" beyond the power of legislative regulation. In support of this position they quote the following language from *Fragley* v. *Phelan,* 126 Cal. 395, [58 Pac. 928] :—

"If, however, the charter of a city, whether given to it by the legislature prior to the constitution of 1879, or framed by a board of freeholders, contains no provision in reference to subjects which might have been included therein, that city or its inhabitants is not thereby freed from legislative control. The legislature is vested with the law-making power of the state, and the general laws passed by it have force in all parts of the state, unless, by virtue of some provision in the constitution, such effect is limited, or the law-making power has been lodged elsewhere. A city cannot claim to be exempt from general laws relating to municipal affairs if there is no provision relating to such affairs in the charter under which it is acting, whether such charter is one framed by itself or was given to it by the legislature."

Counsel for appellants maintain that as the charter does provide for the levy of taxes by the common council to carry on the different departments of the municipal government, it gives the council authority to open, close, widen, lay out, and otherwise deal with public highways; and establishes a street fund from which shall be paid all expenses for street improvements not otherwise provided for in the charter, that there is

ample authority for the construction of streets out of the ordinary revenue of the city without the help of section 26 of the Vrooman Act [Stats. 1891, p. 206] or any other provision of general law. Whether we regard the authority to raise the fund as being derived from the charter which has adopted the method of the Vrooman Act, or from that general statute itself, the fact remains that no scheme of expenditure has been provided in the charter for the payment of this money, and we are convinced that the statute of 1901 must be followed and the work must be done according to contract as therein commanded. While the charter does confer certain powers upon the common council in the matter of laying out and repairing streets and the like, no rules are made by charter for the payment of the money used in such improvement. It follows that the demurrer to the first defense set up in the answer was properly sustained. (*Matthews* v. *Town of Livermore,* 156 Cal. 294, [104 Pac. 303].)

We need not review in detail the second defense sought to be pleaded in the answer. Suffice it to say that it utterly fails to set up any facts showing collusion. The demurrer to it was properly sustained.

There remains only to consider appellants' contention that their demurrer to the complaint should have been sustained because of failure to disclose plaintiffs' right of action, in that the sort of injury which plaintiffs, as citizens, would suffer, is not therein described. We think it is sufficient answer to this contention that a method of paying for work in a manner not prescribed by law might be expensive and wasteful, and that contractors capable of giving the best service might be precluded from participating in the effort to secure contracts to do the work.

This would give plaintiffs, as citizens, sufficient standing to maintain this action. (*Winn* v. *Shaw,* 87 Cal. 636, [25 Pac. 968]; *Crampton* v. *Zabriskie,* 101 U. S. 601, [25 L. Ed. 1070]; *Barry* v. *Goad,* 89 Cal. 222, [26 Pac. 785]; *Bradford* v. *San Francisco,* 112 Cal. 543, [44 Pac. 912].)

It follows that the judgment should be affirmed and it is so ordered.

Lorigan, J., and Henshaw, J., concurred.