[Civ. No. 16340. Second Dist., Div. Two. May 17, 1948.]

A. L. WIRIN, Appellant, v. C. B. HORRALL et al., Respondents.

A. L. Wirin, in pro. per., and Fred Okrand for Appellant.

Nathan Schoichet, as Amicus Curiae, on behalf of Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, and Roger Arnebergh, Assistant City Attorney, for Respondents.

McCOMB, J.—This is an appeal from a judgment of dismissal predicated upon the sustaining, without leave to amend, of a demurrer to plaintiff's complaint by which it was sought to obtain an injunction restraining defendants from expending funds of the city of Los Angeles in conducting "police block-

ades," that is, blocking off designated areas of the city of Los Angeles and stopping all persons and automobiles entering or leaving such areas and searching them without first obtaining search warrants.

The material allegations of the complaint well pleaded are these, that:

## I

Plaintiff is a citizen of the United States, of the State of California, of the city of Los Angeles, and a taxpayer of the city of Los Angeles, having paid a tax to the city within a year prior to the filing of the complaint.

## II

Defendants are police officers of the city of Los Angeles.

## III

Defendants acted in excess of their authority as police officers.

## IV

Defendants expended illegally large sums of money of the city of Los Angeles by blockading large areas of said city and stopping all persons and automobiles entering or leaving said area without first obtaining a search warrant therefor,[1] and on

---

[1]In paragraph III (1) of the complaint it is alleged as follows: "On March 14, 1947, the defendants conducted a 'police blockade' on the East side of the City of Los Angeles at seven (7) intersections, said intersections being Bailey and North Main Streets; First Street and Mission Road; Soto and Marengo Streets; Jefferson Blvd. and San Pedro Street; Washington Blvd. and Central Avenue; 103rd Street and Wilmington Road and 103rd Street and Central Avenue, from 9 o'clock to midnight. In addition to the defendants, approximately two hundred (200) police officers participated in said blockade, said police officers being divided up in seven (7) crews. Approximately thirty (30) police officers were stationed at each of said intersections. Said defendants, and said police officers, thereupon stopped every motor car entering into any of said intersections, or leaving any of said intersections; they questioned the occupants of said automobiles, ordered many of said occupants to leave their automobiles, searched said automobiles thoroughly, including the glove compartments of said automobiles, and searched the trunk or baggage compartments located thereat; in addition, they searched the persons of a large number of the occupants of said automobiles; a large number of the persons so stopped and/or searched, by the defendants were not arrested, or detained further; a number of the persons so stopped, searched and detained were arrested but were thereafter released by the defendants after extended detention, and without being brought before a magistrate without unreasonable delay or at all.

"Said defendants had no search warrants and said searches were not pursuant to any search warrant; the conduct of the defendants above set forth was without the consent of, and against the will of, the persons treated as hereinabove described."

other occasions, in addition to searching persons entering and leaving the blockaded areas, they, without search warrants, searched every person within the designated area.[2]

## V

Defendants publicly announced that they intend to continue to conduct "police blockades" as herein above set forth at times and places unannounced unless enjoined by court order.

## VI

The acts of defendant constitute a violation of (1) the Fourth Amendment to the Constitution of the United States, and (2) article I, section 19, of the Constitution of the State of California.

Defendants filed a demurrer to the foregoing allegations of the complaint on the ground that they did not constitute sufficient facts to state a cause of action. This demurrer was sustained without leave to amend and a judgment of dismissal entered thereon.

### QUESTIONS PRESENTED FOR DETERMINATION

First: *Did the facts as alleged in the complaint state a cause of action?*

This question must be answered in the affirmative and is governed by these pertinent rules of law:

██ (1) A demurrer admits all the allegations of the complaint which are well pleaded, and it must be assumed on appeal from a judgment predicated upon the sustaining of a

---

[2]In paragraph III (4) and (5) of the complaint it is alleged as follows: "On the evening of June 5, 1947, the defendants blockaded, pursuant to a 'police blockade' the entire area of the City of Los Angeles, bounded by Main Street, Central Avenue and 4th and 6th Streets; they questioned every person within that area; they searched said persons, ordering a large number of them to remove their shoes or themselves removing said shoes of said persons by physical force; they questioned said persons and finger-printed them; all automobiles entering and leaving said area were stopped, the occupants questioned and cars searched; they searched every bar, cafe and rooming house in said area; of the large number of persons detained, approximately three hundred and fifty (350) persons were booked or arrested. In other respects, the conduct of the defendants was as set forth in paragraph (1) hereinabove.

"(5) On the evening of June 19, 1947, the defendants conducted a raid of all bars along West Pico Blvd. from Flower Street to Alvarado Street; approximately one hundred (100) police officers participated in said raid or raids; one hundred and fifty (150) persons were arrested; only sixteen (16) however, were jailed. The persons arrested were questioned by the defendants and searched in a so-called 'field station,' specially set up by the defendants in the Georgia Receiving Hospital on Georgia Street, Los Angeles. In other respects, the conduct of the defendants was as set forth in paragraph (1) hereinabove."

demurrer that plaintiff could prove all the facts as alleged in the complaint. (*Kleiner* v. *Garrison*, 82 Cal.App.2d 442, 445 [187 P.2d 57]; *Abroms* v. *New York Life Ins. Co.*, 53 Cal.App.2d 764, 772 [128 P.2d 391]. See also cases cited in 21 Cal.Jur., 1925, p. 96, § 62.)

 (2) Persons lawfully within the United States of America are entitled to use the public highways and have a right to free passage thereon without interruption or search, unless a public officer authorized to search knows of probable cause for believing that the vehicle is carrying contraband or that the occupants thereof have violated some law. (U. S. Const., Amend. IV; Cal. Const., art. I, § 19; *Carroll* v. *United States*, 267 U. S. 132, 154 [45 S.Ct. 280, 69 L.Ed 543, 552, 39 A.L.R. 790].)

 (3) All *illegal* searches and seizures are "unreasonable" under the provisions of Amendment IV of the Constitution of the United States, and article I, section 19, of the Constitution of the State of California. (See cases cited in 56 C.J., 1932, § 14, p. 1162, Searches and Seizures, note 17; § 17, p. 1164; § 22, p. 1165, note 1.)

Amendment IV of the Constitution of the United States reads as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Constitution of the State of California reads in part as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable seizures and searches, shall not be violated; and no warrant shall issue, but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." (Const. of 1849, art. I, § 19.)

Mr. Chief Justice Taft, in considering the Fourth Amendment of the Constitution of the United States with reference to unlawful search and seizure of automobiles, in *Carroll* v. *United States, supra,* thus stated the rule: "But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."

The reasons for the adoption of the Fourth Amendment of the Constitution of the United States and article I, section 19 of the Constitution of the State of California must be continually borne in mind if we are to preserve the individual liberties of citizens of this country and state. To safeguard the rights and liberties set forth in our federal and state Constitutions, such rights must be strictly enforced, otherwise we will gradually whittle away our liberties and destroy our form of government with the inevitable result that there will be substituted a despicable form of totalitarianism. Such form of government has always been abhorrent to our people.

The object to be attained by the adoption of the constitutional provisions above set forth is best expressed by Judge Cooley in his monumental work on Constitutional Limitations: "It was the peculiar excellence of the common law of England that it recognized the worth, and sought especially to protect the rights and privileges, of the *individual man*." (Italics added. Vol. I, Cooley's Constitutional Limitations, (8th ed. 1926) p. 73.) This statement is equally applicable to the Constitutions of the United States and the State of California. This end is best accomplished by insuring that "The provisions prohibiting unreasonable searches and seizures 'should receive a liberal construction, so as to prevent stealthy encroachment upon or "gradual depreciation" of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers.' " (Cooley's Constitutional Limitations, *supra*, p. 617.)

In discussing the unlawful search and seizure provisions in the Fourth Amendment of the Constitution of the United States, Mr. Justice Bradley in *Boyd* v. *United States*, 116 U.S. 616, 629 [6 S.Ct. 524, 29 L.Ed. 746, 750] says:

"Then, after showing that these general warrants for search and seizure of papers originated with the Star Chamber, and never had any advocates in Westminster Hall except *Chief Justice* Scroggs and his associates, *Lord* Camden proceeds to add:

" 'Lastly, it is urged as an argument of utility, that such a search is a means of detecting offenders by discovering evidence. I wish some cases had been shown, where the law forceth evidence out of the owner's custody by process. There is no process against papers in civil causes. It has been often tried but never prevailed. Nay, where the adversary has by

force or fraud got possession of your own proper evidence, there is no way to get it back but by action. In the criminal law such a proceeding was never heard of; and yet there are some crimes, such, for instance as murder, rape, robbery and house breaking, to say nothing of forgery and perjury, that are more atrocious than libeling. But our law has provided no paper search in these cases to help forward the conviction. Whether this proceedeth from the gentleness of the law towards criminals, or from a consideration that such a power would be more pernicious to the innocent than useful to the public, I will not say. It is very certain that the law obligeth no man to accuse himself; because the necessary means of compelling self accusation, falling upon the innocent as well as the guilty, would be both cruel and unjust; and it would seem that search for evidence is disallowed upon the same principle. Then, too, the innocent would be confounded with the guilty.'

"After a few further observations, His Lordship concluded thus: 'I have now taken notice of everything that has been urged upon the present point; and upon the whole we are all of opinion that the warrant to seize and carry away the party's papers in the case of a seditious libel is illegal and void.'

"The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions, on the part of the Government and its employees, of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors and the rummaging of his drawers that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offense; it is the invasion of this sacred right which underlies and constitutes the essence of *Lord* Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods is within the condemnation of that judgment. In this regard the Fourth and Fifth Amendments run almost into each other.

"Can we doubt that when the Fourth and Fifth Amendments to the Constitution of the United States were penned

and adopted, the language of *Lord* Camden was relied on as expressing the true doctrine on the subject of searches and seizures, and as furnishing the true *criteria* of the reasonable and unreasonable character of such seizures?''

■ Applying the above-stated rules to the facts of the instant case we must assume that each of the facts set forth above is true.[3] Therefore defendants (1) stopped automobiles and searched them and (2) stopped individuals and searched them, without having probable cause to believe that the automobiles contained contraband or that the individual citizens had violated any law.

These acts were contrary to the provisions of the Fourth Amendment of the Constitution of the United States and article I, section 19 of the Constitution of the State of California,[4] and therefore, since the acts were illegal, the searches and seizures were unreasonable[5] and prohibited by the foregoing constitutional provisions.

In view of these facts it is evident that defendants were wasting and unlawfully expending funds of the city of Los Angeles, and plaintiff as a taxpayer of such city had a right to have such illegal acts enjoined. The complaint stated a cause of action.

■ Second: *Does plaintiff have the right to maintain the present action as a taxpayer of the city of Los Angeles?*

This question must also be answered in the affirmative and is governed by this rule:

An action to obtain a judgment restraining and preventing illegal expenditure or waste of funds of a city may be maintained against any officer, agent, or other person acting in its behalf by a citizen resident therein who has within one year before the commencement of the action paid a tax to such city. (Code Civ. Proc., § 526a; *Brown* v. *Boyd,* 33 Cal. App.2d 416, 423 [91 P.2d 926].)

It is apparent that if defendants acted as alleged their acts were unlawful and beyond the scope of their authority. Therefore they were illegally expending and wasting the public funds of the city of Los Angeles in (a) using the equipment of the police department of the city in illegal and unauthorized

[3]Rule (1), *supra.*
[4]See rule (2), *supra.*
[5]See rule (3), *supra.*

acts and (b) expending the time of the paid police officers of the city of Los Angeles in performing illegal and unauthorized acts. It is clear that if defendants acted as alleged, and we must for the purpose of this opinion assume they did, their acts were ultra vires.

This opinion is not to be taken as a criticism of defendants or of the police department of the city of Los Angeles, which we believe is endeavoring to properly enforce the laws of the State of California and of the city of Los Angeles. However proficient the law enforcing agency may be it does not by virtue thereof acquire ascendency over the law. In a free government it must constantly be borne in mind that each and every individual, no matter what his state of wealth or official position, is subject to the Constitution adopted by the people and the laws made pursuant thereto, and that where a violation of law necessarily follows, acts of executive and administrative officials are not given validity on the theory that "the end justifies the means."

Judge Irving Lehman of Court of Appeals of New York, in an address before the New York Bar Association in 1930, speaking anent this subject, well expresses the American judicial concept. He said: "They [the police] regard themselves in a sense as soldiers engaged in a warfare against crime, and in that warfare they sometimes apply the maxim of 'inter arma, silent leges.' In the din of war the voice of law is drowned. We have complacently accepted that maxim in warfare against external and avowed enemies. I fear that many complacently accept it as a necessary incident of what we choose to call the warfare of the State against crime.

"We are told that the police should not be hampered in conscientious efforts to bring to justice those who break the law. . .

"Perhaps the police should be permitted to arrest suspects and postpone arraignments before a magistrate until they have exhausted attempts to extract admissions or confessions of guilt. Perhaps the police should be permitted to use what we euphemistically call the 'third degree' or other modern and scientific substitutes for the rack and thumbscrew. If so, the Constitution and the statutes should be changed, but so far no one has had the temerity to suggest such changes.

"Of course, no such suggestions would receive serious consideration. They would strike too deep at the roots of all our cherished traditions and ideals, but suggestions that the courts

should not hamper public officers by restricting them to the use of lawful methods seem to many of our citizens in accord with practical common sense. Our boasted guarantees of liberty, it would seem, are so precious that they must be kept for special occasions and not subjected to the wear and tear of daily use. *Not so may the courts treat these guarantees. In a court of law no argument based on expediency can ever justify a lawless invasion of a legal right.*"[6] (Italics added.)

In view of our conclusions it is unnecessary to discuss other issues argued by counsel.

The judgment is reversed with directions to the trial court to overrule the demurrer and allow defendants a reasonable time within which to file an answer if they be so advised.

Moore, P. J., and Wilson, J., concurred.

[6]N.Y. Law Journal, Feb. 28, 1930.