[L. A. No. 24053. In Bank. Aug. 6, 1957.]

A. L. WIRIN, Appellant, v. WILLIAM H. PARKER, as Chief of Police, etc., Respondent.

A. L. Wirin, in pro. per., Fred Okrand and ,Nathan L. Schoichet for Appellant.

Roger Arnebergh, City Attorney (Los Angeles), Bourke Jones, Alan G. Campbell and James A. Doherty, Assistant City Attorneys, and Ralph J. Eubank, Deputy City Attorney, for Respondent.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, as Amici Curiae on behalf of Respondent.

TRAYNOR, J.—Plaintiff, a resident citizen taxpayer of the City of Los Angeles, brought this action against defendant as chief of police of the city to enjoin the alleged illegal expenditure of public funds to conduct police surveillance by means of concealed microphones. (Code Civ. Proc., § 526a.) Pursuant to stipulation the matter was submitted on the pleadings, affidavits, and depositions. The trial court made findings of fact and conclusions of law and entered judgment for defendant. Plaintiff appeals.

Plaintiff contends that undisputed facts found by the trial court establish his right to injunctive relief. The trial court found that "Since his appointment and qualification as Chief of Police of the City of Los Angeles, the defendant in such capacity has authorized and directed the installation, maintenance and use of dictographs by regular salaried police officers

of the Los Angeles Police Department, but only when in his sole discretion such use and installation has been necessary in the performance of their duties in detecting crime and in the apprehension of criminals. In so doing defendant has acted in good faith and has in good faith believed that he was acting in the lawful discharge of his official duties." Acts authorized by defendant have "embraced the following: 1. The concealment by a police officer in the place concerned of a microphone, or other sound transmission device, in such manner that it may receive sounds within the range of its capabilities. 2. The provision of means whereby sounds received by such microphones are transmitted to a place where a police officer may and does hear and record such sounds. The defendant has not authorized or directed any dictograph installation, nor has any police officer of the City of Los Angeles, acting pursuant to the authorization or direction of defendant, installed, maintained or used any dictograph installation, except where the defendant and such officers had at all times reasonable cause to believe that persons under surveillance by such means had committed crimes or planned and intended the commission of crimes, or that information thus obtained would aid in the detection or prevention of crime, or that information thus obtained would assist in the apprehension of fugitives or other criminals. In one or more of such instances, but not in all of them, the installation, maintenance or use of dictographs by regular salaried police officers . . . , pursuant to the authorization and direction of the defendant, have been in a house, apartment, room, office, store, bar, jail cell, or other place of occupancy, either without the consent, knowledge, permission or authority of some person having a property interest in such property or place, or without the knowledge, consent, permission or authority of some person present during such installation, or during such maintenance or during such use. The installation, maintenance or use of dictograph equipment without the knowledge, consent, permission or authority of each such person has been effected only where the defendant and such police officers, acting pursuant to the authorization or direction of defendant, believed in good faith and upon probable cause that knowledge of the surveillance on the part of such person would destroy the value and purpose of such installation." The court also found that dictograph surveillance as authorized and directed by defendant was necessary for the prevention or punishment of certain felonies and mis-

demeanors, and that although funds "of the City of Los Angeles have been expended by defendant to defray the cost of the equipment and of the personnel time" involved, the "amount of such expenditures is neither large nor substantial, and the use of such means of necessary surveillance reduces the cost of the police work involved below what would be required in efforts to achieve similar purposes by other means. As of July 2, 1952, the date on which the answer of the defendant to the amended complaint was filed, the defendant was continuing, and proposed and intended thereafter to continue, the authorization and direction of such uses of sound transmission equipment by regular salaried police officers of the City of Los Angeles when the installation, maintenance and use of such equipment should be necessary in his sole discretion in the performance of the duties of the defendant and of such officers in preventing and detecting crime and in the apprehension of criminals. . . . There is no threatened or actual irreparable injury to the plaintiff or to any other taxpayer, or to the general public of the City of Los Angeles, by any substantial waste of funds of the said city in connection with the installation, maintenance or use of dictograph equipment as described herein. There is no impending or threatened injury to the plaintiff or to any taxpayer or to the general public of the City of Los Angeles by reason of any future or threatened authorization in such connection by the defendant or by reason of any future or threatened installation, maintenance or use of dictograph equipment by any police officer of the Los Angeles Police department acting pursuant to such future or threatened authorization."

It is clear from the finding that "In one or more of such instances, but not in all of them, the installation, maintenance or use of dictographs by regular salaried police officers . . . , have been in a house, apartment, room, office, store, bar, jail cell, or other place of occupancy, either without the consent, knowledge, permission or authority of some person having a property interest in such property or place, or without the knowledge, consent, permission or authority of some person present during such installation, or during such maintenance or during such use," that defendant has authorized and directed dictograph surveillance in violation of the provisions of the United States Constitution (4th and 14th Amendments) and the California Constitution (art. I, § 19; *Irvine* v. *California*, 347 U.S. 128 [74 S.Ct. 381, 98 L.Ed.

561]; *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905]; *People* v. *Tarantino,* 45 Cal.2d 590 [290 P.2d 505]), and that as of July 2, 1952, he intended to continue so doing. Moreover, it appears from his answer and evidence before the trial court that at least before the decision in the Irvine case in 1954, defendant took the position that all of his activities in this respect were lawful, and he candidly alleged in his answer that the consent of the ''owner, occupant, or lessee of the premises'' upon which installations were made was not sought or obtained ''when there is reason to believe that . . . knowledge on the part of such person may or will destroy the value of an installation as an aid in the apprehension of criminals and the prevention or detection of crime.''

■ The Code of Civil Procedure, section 526a, provides that plaintiff may maintain an action to restrain the expenditure of public funds for illegal purposes. It is immaterial that the amount of the illegal expenditures is small or that the illegal procedures actually permit a saving of tax funds. (*Mines* v. *Del Valle,* 201 Cal. 273, 279-280 [257 P. 530]; *Crowe* v. *Boyle,* 184 Cal. 117, 121 [193 P. 111]; *Osburn* v. *Stone,* 170 Cal. 480, 484 [150 P. 367]; *Santa Rosa Lighting Co.* v. *Woodward,* 119 Cal. 30, 34 [50 P. 1025]; *Barry* v. *Goad,* 89 Cal. 215, 222-223 [26 P. 785]; *Winn* v. *Shaw,* 87 Cal. 631, 637 [25 P. 968]; *Terry* v. *Bender,* 143 Cal.App.2d 198, 208 [300 P.2d 119]; *Trickey* v. *City of Long Beach,* 101 Cal.App.2d 871, 881 [226 P.2d 694]; *Wirin* v. *Horrall,* 85 Cal.App.2d 497, 504-506 [193 P.2d 470]; *Brown* v. *Boyd,* 33 Cal.App.2d 416, 418 [91 P.2d 926]; see *Simpson* v. *City of Los Angeles,* 40 Cal.2d 271, 276 [253 P.2d 464].) ■ It is elementary that public officials must themselves obey the law. ■ It has been expressly held in this state that expediency cannot justify the denial of an injunction against the expenditure of public funds in violation of the constitutional guarantees here involved. (*Wirin* v. *Horrall,* *supra,* 85 Cal.App.2d 497, 504-506.) It bears emphasis that none of the arguments marshalled in *People* v. *Cahan, supra,* 44 Cal.2d 434, against the adoption of the exclusionary rule are here applicable. Plaintiff seeks to enforce directly the constitutional provisions to preclude the problem of the Cahan case. Indeed, the enforcement of the Fourth Amendment by contempt proceedings against overzealous officers was advocated as an alternative to the exclusionary rule by one of its ablest and severest critics (see 8 Wigmore on Evidence [3d ed.] § 2184, p. 40), and the dissenting opinion in the Cahan case stressed the arguments for a direct rather than indirect

method of enforcing the constitutional guarantees that would not deprive " 'society of its remedy against one lawbreaker because he has been pursued by another.' " (44 Cal.2d 434, 458.)

Defendant nevertheless contends that the scope of the constitutional prohibitions is so uncertain that an injunction against their violation would either be too vague to be enforced or would operate to deter the police from permissible and essential activity for fear of transgressing its limits. He also contends that the court cannot determine in advance the reasonableness of police surveillance, which turns on the facts of the particular case. Plaintiff, however, does not seek an injunction against all unconstitutional police activities, nor does he ask the court to define in advance precisely what defendant could or could not do in all contingencies. His primary concern is to prevent repetitions of police conduct held to fall clearly within the constitutional prohibitions in the Irvine, Cahan, and Tarantino cases. Whether or not there may be other circumstances in which eavesdropping by the use of concealed microphones to record private conversations is violative of the constitutional guarantees, the conduct condemned in those cases is easily defined. Defendant himself now contends that he is complying with those decisions.

An injunction against the expenditure of public funds to defray the cost of the entry into or upon private premises without the consent of a possessor thereof for the purpose of secreting a microphone or other sound transmission equipment secretly to overhear or record sounds coming therefrom could easily be understood and obeyed and would in no way inhibit lawful police activity.

Since the court found that in the past defendant believed in good faith that he was acting in the lawful discharge of his official duties, and since he now states in his brief that he is complying with the rule of the Irvine case, he contends that we should assume that he will not engage in the questioned conduct and that an injunction is therefore unnecessary. The evidence and defendant's pleading before the trial court were to the effect, however, that defendant intended to continue the illegal conduct, and although it related to his intention before the Irvine case was decided, the matter was not argued or submitted until several months thereafter. He did not amend his answer or introduce evidence that his intentions had changed, and the only finding with respect to his intentions was that as of July 2, 1952, prior

to the Irvine decision, he intended to continue to engage in constitutionally prohibited conduct. Under these circumstances, if an injunction is to be denied on the ground that there is no threat of future illegal expenditures, plaintiff is entitled to meet that issue and secure a clear finding thereon. (*Fairchild* v. *Raines,* 24 Cal.2d 818, 830 [151 P.2d 260] ; see *Sacre* v. *Chalupnik,* 188 Cal. 386, 390 [205 P. 449].)

The judgment is reversed.

Gibson, C. J., Carter, J., Schauer, J., and McComb, J., concurred.

SHENK, J.—I dissent.

Under the guise of protecting the public treasury the plaintiff would prevent the purchase of equipment which may be used for a lawful purpose. Assuming that it might be used also for an unlawful purpose it is nevertheless in the same category as firearms which may be so used but whose employment in the enforcement of the law is absolutely essential. It is conceded by the majority that the plaintiff's primary concern is to prevent repetitions of police conduct held to fall within the constitutional prohibitions in the Irvine (*Irvine* v. *California,* 347 U.S. 128 [74 S.Ct. 381, 98 L.Ed. 561]), Cahan (*People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905]) and Tarantino (*People* v. *Tarantino,* 45 Cal.2d 590 [290 P.2d 505]) cases. Such a sweeping injunction is beyond the power of a court to impose and constitutes an attempt by judicial action to impose restraints on other branches of the government in violation of the separation of powers doctrine.

It is provided by statute that an injunction will not lie to "prevent the execution of a public statute by officers of the law for the public benefit." (Code Civ. Proc., § 526, subd. 4; see also Civ. Code, § 3423.) Certainly the execution of the statutes embodied in the Penal Code is "for the public benefit."

Furthermore, even if an injunction would lie to accomplish the purpose sought by the plaintiff nothing in the present record justifies a determination that there is a threat that the defendant chief of police is now engaged, or will engage, in any unlawful activity. At all stages in this proceeding he has made it clearly understood that he has intended and intends to comply with the law. The plaintiff concedes that the chief has acted at all times in good faith in this respect. The record shows that the type of microphone installations

held to be illegal in the Irvine and Cahan cases were utilized by the chief only prior to those decisions and at a time when such installations were held by our courts to be proper means of police detection. It was not until almost two years after the filing of his answer in this case that the decision in the Irvine case for the first time put him on notice that such conduct might be improper. The defendant asserts, without contradiction, that he has not since that time employed such devices in a prohibited fashion. There is nothing in the record to indicate that he will not comply with the law. The court should give consideration to his conceded good faith. Until a specific violation is threatened there is no reason for court relief. Here there is no such threat. Indeed, the defendant has consistently asserted that he intends to comply with the law as the courts have interpreted it.

Also there is no question, and the opinion so concedes, that lawful police activity should not fall within the scope of the injunctive restraint sought to be imposed. It is not disputed that lawful police measures may often involve the use of microphonic equipment and recording devices. To issue an injunction in the present case would impose on the defendant the unreasonable burden of determining at his peril whether the use of such equipment in any situation would be violative of the restraining order. The existence of such a restraint certainly would constitute an undue interference with the duties of a public official sworn to uphold and enforce the law. I would affirm the judgment.

Spence, J., concurred.

Respondent's petition for a rehearing was denied September 4, 1957. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.